**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg (Charlottesville) Division**

| | |
|---|---|
| In re: **SUE MIFKA STOTTS,** Debtor. | Case No. 16-61788<br><br>Chapter 13 |
| **DONALD G. STOTTS,** Plaintiff, v. **SUE MIFKA STOTTS, et al.** Defendants. | Adversary Proceeding No. 17-06005 |
| **CHARLES KABBASH,** Plaintiff, v. **SUE MIFKA STOTTS, et al.** Defendants. | Case has been consolidated with:<br><br>Adversary Proceeding No. 17-06002 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

In this Adversary Proceeding the Plaintiff, Donald G. Stotts ("Plaintiff") seeks, among other things, a determination of the value of certain real property identified by the Debtor in her schedules, a determination of the nature and extent of the Debtor's interest in that real property and the claims of other parties to that real property, and a declaration that a valid

executory contract exists between the Plaintiff and the Debtor which must be addressed in the Debtor's plan. Pursuant to a telephonic status conference that took place on February 7, 2017, the Court directed the parties to file memoranda addressing certain preliminary issues in this case, specifically whether there was a jurisdictional impediment to the Court considering the substantive issues in this case. The Debtor filed her memorandum on March 6, 2017, and this memorandum is submitted in accordance with the Court's order and in response to that filed by the Debtor.

The Debtor's memorandum addressed some of the substantive underlying issues in this case including the nature and extent of the Debtor's interest in the real estate. To the extent that these arguments go to the merits of the underlying case, as opposed to the jurisdictional question, the Plaintiff does not address them in this memorandum but will do so when and if ordered by the Court.

Facts

As shown in the Debtor's schedules, Debtor and Plaintiff are co-owners of a parcel of real estate located in Louisa County, Virginia, known as 14043 Jefferson Highway, Bumpass, Virginia (the "Property"). When the Debtor and Plaintiff purchased the Property on January 2, 1991, they were married and they acquired the Property as tenants by the entirety. On December 12, 1996, the Debtor and Plaintiff were divorced, thus terminating the tenancy by the entirety under Virginia law and making them co-tenants, each owning an undivided 50% interest in the Property.

Subsequent to the Stotts's divorce, a number of creditors obtained judgments against the Debtor which were docketed in Louisa County thus creating liens on the Debtor's interest in the Property.

Pursuant to a contract of purchase and sale dated March 2, 2009 (the "Contract"), Donald Stotts agreed to convey his interest in the Property to Debtor upon her "complete payment" of a

2

promissory note in the amount of $104,000.00 accompanying the transaction (the "Promissory Note").

The Debtor subsequently defaulted on the Promissory Note, and Donald Stotts brought suit in Louisa County Circuit Court against the Debtor. While the suit, as filed, sought the full amount due under the Promissory Note, at trial the Plaintiff elected to seek recovery only for the amounts overdue under the Promissory Note as of the date of trial. On April 8, 2015, the Louisa County Circuit Court entered judgment (the "Judgment") in favor of Donald Stotts and against the Debtor in the amount of $59,209.81 with interest thereon at the rate of 6% per year from March 25, 2015.

Thereafter Donald Stotts brought suit in the Louisa County Circuit Court to partition the Property so that it could be sold. The Debtor filed a plea in bar in the case contending that under the doctrine of equitable conversion Donald was no longer a coparcener of the Property and could not, as a result, pursue partition. The state court entered an order sustaining the plea and ruling that Donald Stotts "is not the real beneficial owner of the property."

In the Debtor's schedules she claimed that she owned a 50% interest in the Property. In the present Adversary Proceeding the Plaintiff seeks a determination that the Debtor owns 50% of the Property outright, while the Plaintiff retains legal title to 50% of the Property subject to the Debtor's equitable interest in the remainder of the Property which is subject to her contractual obligation to pay the Plaintiff therefor.

Argument

1. <u>No party has contested the Court's jurisdiction in this Adversary Proceeding</u>.    Neither the Debtor, nor any of the Defendants who have answered the Complaint, have disputed that this Court has jurisdiction pursuant to 28 U.S.C. § 157, 28 U.S.C § 1334, and 11 U.S.C. § 523. To the extent that any of the parties had jurisdictional concerns, they no longer

appear to be advancing them. While the Plaintiff acknowledges that jurisdiction can be challenged at any time, including by the Court sua sponte, he respectfully submits that the allegations in the Complaint, which have not been disputed by anyone, establish jurisdiction in this Court.

2.  <u>Discretionary abstention is not warranted in this case</u>.  Though not challenging jurisdiction, the Debtor now contends in her memorandum that the Court should exercise its discretion to abstain from hearing this matter under 11 U.S.C. § 1334(c)(1), because a decision of the Louisa County Circuit Court dismissing the Plaintiff's partition suit has some bearing on the outcome in this case. For the reasons set forth below abstention is not warranted in this matter.

A bankruptcy court, "in the interest of justice, or in the interest of comity with State courts or respect for State law," may "abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). "[B]ankruptcy courts have considerable discretion to decide whether to abstain under section 1334(c)(1)." *Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006), *aff'd*, 265 F. App'x 141 (3d Cir. 2008) (citations omitted).

Though neither the Supreme Court nor the Fourth Circuit have adopted a specific test under § 1334(c)(1), many courts (including other judges of this Court) consider a twelve-factor test when determining whether to exercise permissive abstention:

> (1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow

4

>   judgments to be entered in state court with enforcement left to the
>   bankruptcy court, (9) the burden on the bankruptcy court's docket,
>   (10) the likelihood that the commencement of the proceeding in
>   bankruptcy court involves forum shopping by one of the parties,
>   (11) the existence of a right to a jury trial, and (12) the presence in
>   the proceeding of nondebtor parties.

*In re Webber*, No. 15-70705 at 5-6 (Bankr. W.D. Va. April 7, 2016) (citing *In re Patterson*, No. 00-31057S, 2000 WL 34532242, at *2, *2 n.1 (Bankr. E.D. Va. Aug. 30, 2000)).

Though the Debtor cites the decision in *In re Webber*, she does not address any of the factors beyond making the glib statement that "state law will determine the application of the doctrine of equitable conversion" to the Debtor's interest in the Property and that the state court will be in the "best position to interpret and apply its own order." A cursory review of the factors that are relevant, and the facts in this case, demonstrates that abstention is unwarranted.

The only factors that might arguably support abstention are factors (2) and (3) which require the Court to consider the extent to which state law issues predominate over bankruptcy issues, and the difficulty or unsettled nature of the applicable law.[1]

---

[1] A substantial majority of the factors support proceeding in this Court. Because a hearing on confirmation has been continued pending resolution of the claims raised in the adversary proceedings, and a trial is scheduled for these proceedings within the next month, efficient administration of the estate will be negatively impacted and substantially delayed if an additional state court case must be pursued (factor (1)). There is no related proceeding pending in state court (factor (4)). There are jurisdictional bases in this Court besides 28 U.S.C. § 1334 (factor (5)). The adversary proceeding is closely related to the main proceeding as it directly addresses the nature and extent of the Debtor's interest in the bankruptcy estate (factor (6)). The present case is not one where form is triumphing over substance as the issue is central to a determination of the nature and extent of the Debtor's estate identified in her schedules (factor (7)). Any burden on the Bankruptcy Court's docket will be minimal as the matters are already set for trial next month; to the contrary, abstaining and requiring that confirmation of the plan await a decision in an as yet un-filed state court action would negatively impact the Court and the creditors in the main proceeding (factor (9)). There is no allegation or evidence of forum shopping (factor (10)). As the state law claim is an equitable, the parties would have no right to a jury in the state court system (factor (11)). Factor 12, which considers whether non-debtor parties are being hailed into bankruptcy court, is immaterial in the present case as all of the non-debtor parties have, or should have, filed proofs of claim as they have liens against the Property and would therefore be before

The state court decision is final and was not appealed. The present action does not call on the Court to interpret any novel point of state law or even to interpret the state court decision. It is now evident from the Debtor's memorandum that the Debtor and the Plaintiff actually agree on the meaning of the state court decision.[2] Defendant Eastern argues in its "Plea of Res Judicata" that the state court decision is binding on the Plaintiff and the Debtor. Defendant Kabbash makes clear in his answer that he also believes that the decision of the state court is binding in this proceeding. Simply put, all parties agree that the state court decision is binding. The Complaint simply asks this Court to apply Virginia law, including the state court decision, in this case. This is something that this Court does routinely as federal courts must always look to state law to determine the nature of property interests.

The dispute is about whether the state court decision means that the Debtor owns 50% or 100% of the Property. The Plaintiff and the Debtor contend that the state court decision does not alter the 50/50 ownership interest of the Plaintiff and the Debtor in the Property. The other Defendants contend, or at least imply, that the Debtor owns 100% of the property. Because this dispute is easily resolved in light of well-established Virginia precedent and prior decisions of this Court, abstention is not merited.

The difference in the parties' opinion about what the state court's decision means does not prove that there is, in fact, any difficulty or unsettledness in applicable Virginia law. Under the

---

the Court in any event.

[2] The gravamen of the Debtor's request for abstention is that interpretation of the state court decision will be required. In light of the fact that the Debtor agrees with the Plaintiff's interpretation of the state court decision this would seem to obviate any need for abstention. However, the answers filed by Defendants Kabbash and Eastern imply that they may have a different view of the state court decision. Because neither of these Defendants has yet filed a memorandum the Plaintiff does not know whether they will also request abstention. If they do not, then the Plaintiff submits that the Debtor's request for abstention should be denied because there is no need for abstention in light of the Debtor's position with respect to the state court decision.

Virginia doctrine of equitable conversion, as it has existed for over a century, "as soon as a valid contract is made for the sale of an estate, equity considers the buyer as the owner of the land, and the seller as a trustee for him; and, on the other hand, it considers the seller as the owner of the money, and the buyer as a trustee for him." *Clay v. Landreth*, 45 S.E.2d 875, 877 (Va. 1948).

Bankruptcy courts have addressed the consequences of equitable conversions on a number of occasions. Where an equitable conversion has occurred, the seller's interest is converted into personal property in the form of a claim for the sum due under the contract, *see In re Bumpass*, 196 B.R. 780, 782 (Bankr. E.D. Tenn. 1996). However, the underlying contractual obligations remain in place. *Id*. The buyer has a "'positive, unqualified obligation' to pay" the purchase price. This "obligation is not contingent and must be carried out 'at a definite future time.'" *Id*. The Debtor's interest in the Property comes into the bankruptcy estate as defined and limited by the Contract. *See id*. at 783.

Defendants Kabbash and Eastern apparently contend that the doctrine of equitable conversion regarding the obligations between the seller and the buyer somehow alters the rights of the buyer and seller versus third parties. However, the Virginia Supreme rejected this argument more than eighty years ago. "In equity the vendee owns the land and the vendor is entitled to the purchase money, *but this is an equitable doctrine and cannot be invoked as conclusively determining all legal rights and liens of others*. That this is true is apparent, for judgments against the vendor docketed before his conveyance to the vendee is recorded continue to be liens upon the land." *Miller v. Kemp*, 106 S.E. 203, 206 (Va. 1931) (emphasis added). This Court long ago recognized the same point in *In re Snyder*, 57 B.R. 438, 441 (Bankr. W.D. Va. 1985), where this Court acknowledged that under Virginia law the doctrine of equitable conversion may affect the nature of the ownership interest between the buyer and seller, but does not enlarge or restrict the

7

rights of third parties. The seller retains legal title to the property and third parties may attach that interest if they have a claim against the seller, but if the third parties have no claim against the seller then they cannot impair the seller's interest. If Kabbash and Eastern's argument that the seller was divested of his interest in the property were correct, then there would have been no interest retained by the seller for the liens to have attached to in *Miller* and *Snyder*.

In the present case the Plaintiff brought a partition suit in state court to force a sale of the Property in order that he might collect on his judgment against the Debtor. Virginia law requires that a plaintiff in a partition suit be a "coparcener" with the defendant. The Debtor argued that in light of the doctrine of equitable conversion the Plaintiff stood in the shoes of a trustee and was not a "coparcener" and the state court agreed, ruling that the Plaintiff was not the "real, beneficial owner of the property."

In light of longstanding Virginia precedent, acknowledged by this Court in other cases, the equitable conversion that occurred in this case between the Plaintiff as seller and the Debtor as buyer does not give Defendants Kabbash or Eastern any greater rights than they would have had otherwise; their liens attach only to the Debtor's 50% interest in the Property. When and if the Debtor fulfills her obligations under the Contract and receives her deed for the Plaintiff's interest in the Property, she will then own 100% of the Property and if not avoided or otherwise satisfied before then Kabbash and Eastern's liens might attach to the remainder at that point.

## Conclusion

Because the effect of an equitable conversion under Virginia law has long been established, there is no need for a state court to address the meaning or impact of the state court decision in this case. All of the relevant factors strongly favor this case remaining before this Court and abstention should therefore be declined.

Respectfully submitted,

**DONALD G. STOTTS,**

by counsel.

**s/Neal L. Walters**
Neal L. Walters, Esq.
Virginia State Bar No. 32048
Rebecca C. Hryvniak
Virginia State Bar No. 78946
Attorneys for Plaintiff
Scott/Kroner PLC
418 East Water Street
P.O. Box 2737
Charlottesville, VA 22902
Telephone: (434) 296-2161
Fax: (434) 293-2073
E-mail: nwalters@scottkroner.com

\\SKSERV\Share\Client Files\Stotts, Donald\Adversary Proceeding\Plaintiff's Memorandum of Points and Authorities.docx